Please be seated. Could the clerk call the next case please. Mr. Fischer, good afternoon. Good afternoon, Your Honor. Good afternoon, Your Honor. All of Your Honors. May it please the court and counsel. I'm representing the defendant in this case, Justin Cervantes. Mr. Cervantes was convicted in a jury trial of first-degree murder. Specifically, the jury found that on October 6, 2011, Cervantes stabbed and killed Sven Munt without lawful justification. He was sentenced to a term of 33 years imprisonment. Two issues are raised on appeal. In the first issue, the defendant submits that the trial judge erred when he allowed the state to introduce in rebuttal prior convictions of the defendant and that the judge also erred by instructing the jury it could consider those convictions as substantive evidence of guilt. Both of these rulings were erroneous. They were contrary to well-established Illinois case law, and the defendant submits they denied him a fair trial. He therefore respectfully asks this court in issue one to reverse and remand for a new trial. In an argument today, I intend to address issue one and time-permitting issue two, the sentencing issue, as well. Now, it was undisputed at trial that Justin Cervantes stabbed and killed Sven Munt. What was disputed was his mental state, whether he acted with lawful justification. Specifically, whether he acted in self-defense. The evidence at trial showed that Munt and Cervantes and two other individuals had gathered together in a private residence. They had consumed large quantities of alcohol over an extended period of time prior to the incident. There was also evidence that both Munt and Cervantes were alcoholics, and in addition, cocaine was found in the victim's system during the autopsy. The defendant took the stand and testified on his own behalf, and he maintained that at some point there was an argument between he and the victim. That both men stood up, the victim threw a punch at him, pulled out a knife, and made threats against him. There then ensued a physical struggle. Ultimately, the defendant was able to gain possession of the knife, and testifying that he feared for his life, and also testifying that he was attempting to defend himself against Munt's use of deadly force, he ultimately stabbed and killed the victim. What was Munt's use of deadly force? His fist? No, a knife. According to the defendant's testimony, at some point after throwing a punch at the defendant, the victim, Munt, pulled out a knife. There was a struggle over the knife. And then the defendant got the knife. Ultimately, the defendant gets the knife and stabs and kills the victim. So what was the deadly force after he was disarmed? Well, according to the defendant, at the point he gets the knife, the victim does not sit down or back away and say, okay, you got me, I'm gone. Okay, so I asked what the deadly force was. Well, once an individual pulls a knife from you. Yeah, the knife was gone from the victim. Well, they're still in close quarters. It's a small area, and they're still in close quarters. But he was still ready to pound him, right? Even though the defendant has possession of the knife. Well, regardless, based on the defendant's testimony, the judge did instruct the jury on both perfect self-defense and unreasonable belief in self-defense, second-degree murder. Now, defense realized that the defendant's testimony was subject to impeachment as a result of prior convictions. And so when the defendant testified, the defense fronted some of those convictions, defended admitting that he had prior convictions, one, for violation of an order of protection, and two, for aggravated battery. Well, after the defendant testified, the state asked the judge to introduce into rebuttal additional prior convictions of the defendant, one for battery, two for domestic battery. And the state argued that these instructions, or excuse me, these convictions could be considered as substantive evidence as to the issue of lawful justification. Now, the defense, before arresting, had introduced evidence of spend months violent character and threats on a prior occasion to take the defendant's life. Defense argued that those violent history prior threats by the victim could be considered by the jury as substantive evidence of guilt, but not the defendant's prior convictions, and defense also opposed the admission of the prior convictions. Ultimately, the judge agreed with the state to admit the additional convictions of the defendant, and ultimately the judge instructed the jury it could consider those convictions as well as spend months prior violent history and threats as substantive evidence as to the issue of lawful justification. Was that latter ruling an error? I'm sorry? Was the latter ruling in regard to spend an error? No, the defendant submits that ruling was correct, according to Illinois case law in IPI 3.12x, but by the same token, that particular IPI instruction and Illinois case law shows it was error to admit the additional convictions and instruct the jury as to substantive use. That's the teaching of IPI 3.12x. For the defendant? The defendant's prior convictions. Yeah. In People v. Lynch, the Illinois Supreme Court, and in People v. Harris, this court held that where the defendant raises the defense of self-defense, the state or the defense can introduce evidence of the victim's prior convictions or violent history, and that can be considered substantively by the jury, but the state may not introduce evidence of defendant's prior convictions as substantive evidence because it would be unfair and prejudicial. To a man on the street, that seems a little unfair, doesn't it? How do you explain that? I mean, I know the Supreme Court, but how do you explain that logic? Well, I would disagree with Your Honors, and certainly the Supreme Court and Lynch. Well, yeah, they disagree with me, too. I'm just asking. They didn't find it to be unfair. They found it would be unduly prejudicial, and it would shill the ability of the defendant to raise a self-defense claim. Anytime he raises self-defense, to say, oh, automatically his priors come in. Now, it's one thing if he testifies as he does here, and he admits convictions as he does here, and as correctly happened here, the judge instructed the jury to consider those prior convictions as credibility. That's completely appropriate. Because he brought them in. Because he brought them in. But to bring in additional convictions and tell the jury you can consider them substantively in determining who was the initial aggressor and whether or not there was lawful justification, the courts have found that is unduly prejudicial to the defense. And IPI 3.12x makes very clear, and these cases make very clear, only the defendant's, excuse me, the victim's priors can come in under those circumstances. The homicide where the victim can't defend him or herself. Well, that's true, but the defendant is trying to defend himself and, of course, risks the loss of liberty, or at one time in Illinois, worse if he is convicted. In this case, however, did the defendant offer evidence of the victim's prior convictions? Yes. Not of prior convictions, but of a violent character and the fact that on a prior occasion, the victim had made threats to the defendant along the lines of, if we ever get involved in a fight, you better kill me because I'm going to kill you. And that came in, and the jury was properly instructed he could consider that as substantive evidence. The problem is bringing in the defendant's prior convictions for the same exact purpose. Now, the state makes a token argument on appeal that no error occurred here, and in doing so, the state relies on a limited exception recognized by this court in People v. Harris. In Harris, this court said that if a defendant argues self-defense and brings forth evidence that he himself has a peaceful character, that that then opens the door to the state's admission of defendant's violent character or prior convictions to be considered as substantive evidence. In this case, defense did not introduce evidence of his peaceful character, only of the victim's violent character. Now, the state, if I read the state's brief correctly, seems to argue that by testifying on his own behalf and by remaining silent as to his own character, the defendant implicitly was conveying to the jury that he had a peaceful character. Now, I'm not quite sure how to respond to that argument. It seems to me there's no real logic or legal support for it. I don't know of any case where one side or the other fails to present evidence and somehow that is construed as affirmatively presenting any evidence. That's why I say I think it's a token argument. It should be rejected by this court. Alternatively, the state, in the end, seems to admit, yes, there was error here. Yes, the trial prosecutor and the trial judge were both incorrect, but the defendant should not gain any relief. Defendant submits those arguments should be rejected as well. One of the state's arguments is that it's really the defendant's fault because the defendant asked the judge to give the jury IPI 3.12X. Well, defense did ask the judge to instruct the jury under that instruction as to the victim's prior character, but the defense opposed the admission of the additional convictions, opposed the jury being instructed that they could consider those prior convictions substantively. That's why the judge said in the record, okay, I'm giving this instruction over defense objection. Secondly, the state argues harmless error. For one thing, the state says, well, the jury already heard about some of the defendant's prior convictions when he testified, so what's the additional risk from additional convictions? Well, I think any time you pile on even more prior convictions, that increases the risk of prejudice. And, of course, case law recognizes the serious risk of prejudice when a defendant has prior convictions and those come before the jury. Furthermore, the defendant here, again, he fronted some of his convictions. Now all of a sudden the jury hears he has even more convictions. Perhaps the jury believes at that point that he hasn't been truthful about his past. Yeah, that it's an inference negative on his credibility. And if he was trying to minimize his past, maybe he was trying to minimize his conduct in this case, so they shouldn't accept self-defense either. In addition, as to the convictions he admitted the jury was instructed properly, he could consider those as to his credibility. The additional convictions, they're told they can consider them substantively. So the defendant submits much more prejudice from the additional convictions coming forth. The state also argues if you look at all the evidence in the case, it was overwhelming, that it wasn't self-defense. There was conflicting testimony. On the other hand, I think it's important to note that the jury here, when the case was given to the jury to deliberate, the jury requested transcripts of all of the witnesses' testimony and deliberated into a second day. So the jury didn't right off the bat say, oh, the defendant cannot be believed. Obviously they struggled a bit. I think it was primarily a credibility case, and therefore defendants admits that he was prejudiced. The state's final argument here as to why this court should not grant relief, even though there was error here, is an argument that this court should overturn its decision in People v. Harris and rule that whenever the defendant raises the claim of self-defense, the state should be allowed to introduce for substantive purposes the defendant's prior violent convictions. I would submit, Your Honors, there are two fundamental flaws here. One is that the state really offers no reason to analysis, other than to say it would, of course, halt the prosecution. Again, I think Illinois cases have recognized the prejudice to the defendant when these additional convictions come out, and I would submit, again, it would chill the defendant's ability to raise a claim of self-defense. The second major problem here is that even if Your Honors decided to depart from your decision in Harris, and you have the authority to do so, of course, we still have the Illinois Supreme Court's decision, People v. Lynch, and I don't think Your Honors can overturn Lynch or can rewrite 3.12X. So even if you take Harris out of the equation, case law still would hold that there was error here. So your argument is that Harris follows the Supreme Court? Yes, Your Honor. Right. Yes, Your Honor. For all of these reasons, the defendant submits that the state brought in serious error here at the rebuttal stage, persuaded the judge, unfortunately, both to admit these convictions and to improperly obstruct the jury because it was primarily a credibility case, and it's apparent the jury struggled with it. The defendant would submit that these rulings denied him a fair trial, would respectfully ask Your Honors to remain for a new trial. I'd be happy to address the sentencing argument, although I think time's almost out. Please do. I would say that the defendant submits that there were three errors made by the judge individually or cumulatively which denied him a fair sentencing hearing. Towards the end of sentencing, the judge took a brief recess, then returned to the courtroom and said that he had consulted life expectancy tables and determined that Mr. Cervantes had 33 years left to live, and on that basis imposed a sentence of 33 years imprisonment, even though neither the state nor the defense had introduced those life expectancy tables. Defendant submits number one, this violates the principle that in imposing sentence, judge may not conduct an independent investigation, nor may he rely on evidence that's not presented by either side, and that's really a matter of fairness, because if the judge relies on evidence to the defendant's detriment that the state has not introduced, well, the defendant can't rebut it. The flip side is that if the judge relies to the state's detriment on evidence the defense did not present, the state can't rebut it either, so it's a matter of due process. The judge can't go beyond the record. It's clear here he did. Second error is that defendant was not statutorily eligible for life. Now, I would acknowledge to this point that the judge would have had discretion to impose a sentence greater than 33 had he weighed the appropriate factors that a judge must do at sentencing, but his comments reveal that he put great credence into these life expectancy tables and imposed the 33-year sentence because he thought that was a life sentence. The state conceded its sentence in the non-extended term range applied here. State didn't argue defendant was statutorily eligible for life or extended term. So defendants should have been able to argue, hey, I come from a family that doesn't live long. My life expectancy is only 10 years. Well, it's actually an interesting point because I would submit that it would appear from the record here that if the life expectancy tables would have shown to the judge that it was 40 years, that would have been the sentence. If they would have shown 25 years, that would have been the sentence. The point is if he would have imposed sentence concerning appropriate factors not limiting himself to life, maybe the sentence would have been different. He simply didn't have authority to impose life. But is there judicial notice possibility that you'd take judicial notice of life expectancy tables? I don't think it's appropriate. If your honors want to know was he right or was he wrong, I suppose you could look them up yourselves. But the fact of the matter is, for one thing, I don't know that that would even be an appropriate. You're saying it's not a factor that should be permitted. I'm not sure it's even a factor. Even if the state tried to introduce it, I imagine the defense might object. I can hear neither side brought it in, and the judge is relying on it to say, okay, I give you life. The final argument here is that viewing the judge's comments in the context of the comments that he has made in other cases in which he has sentenced defendants for first-degree murder, it appears that this judge has a predisposition to impose life sentences in murder cases. This was, of course, argued before your honors earlier today in Thomas, and I know your honor Justice Wright was on that panel. A defendant asked your honors to look at Wright and Jordan and what happened in this case. And, of course, the problem with that is that each defendant is entitled to an individualized sentencing determination based on appropriate factors. That's the command of Illinois sentencing statutes. That's the command of the Illinois Constitution. But that's an inference you're making. It is an inference I'm making. That's true. Again, the defendant asked this court to view the judge's comments here in the context of what he has done in other cases, and the case law says your honors are allowed to do that, to take judicial notice of what he has said in other cases. You know, if the judge, and I understand the judge is obligated to go through at length the factors he relies on, but if he talked about all of these various factors and then said 33 years was appropriate, I wouldn't be, I'd only be arguing the first issue here today. But he seemed to rely so heavily on these life expectancy tables and to say, well, that's why I'm giving you the 33, and if by the grace of God you survive that sentence, well, you'll have some time as a free man. That seemed to be his greatest motivation in imposing this sentence, that it would be tantamount to life. And if, and granted it's an if, but if this judge or any judge only imposes the max sentence or even the near-max sentence for defendants convicted of certain offenses just because they've committed those offenses, case law teaches that is error because he's not giving an individualized sentencing determination. And again, for these three separate reasons, individually or cumulatively, defendants submits as an alternative to Issue 1 that he did not receive a fair sentencing hearing and in the event that your honors do not reverse and remand for new trials prayed for in Issue 1, Mr. Cervantes would respectfully ask this court to remand for resentencing before a different circuit court charge. I have a question if Justice McDade doesn't mind. I know we've gone over, but the defendant opened the door in this case or tried to defuse the fact that he had a conviction in 2001 for a violation of order of protection, that he admitted an aggravated battery in 2006, that he pled guilty to another aggravated battery in 2008. Those convictions were admissible under the Montgomery Rule and our new rules of evidence to impeach him, so he kind of softened the blow. When the court did instruct the jury that they could consider certain convictions for impeachment purposes, did the court tell the juries which one counted for only credibility issues and which convictions could be considered as substantive evidence? You know, Your Honor, that's a very good question. I was thinking about this just the other day, and I have to admit to Your Honor that my notes are unfortunately not as detailed in order to be able to answer Your Honor's question. What I would respectfully observe, and if I'm incorrect, look at the record or whatever and let us know, the convictions that came in as substantive were so old they would have been precluded by Montgomery. It was a 1996 conviction for battery, a 1997 conviction for domestic battery, a 1997 conviction for aggravated assault, a 2000 conviction for domestic battery, and they were more than 10 years old. So this is the only way the state could get them under substantive evidence. Well, whether it is or not, the problem, again, is that the current law in the state of Illinois teaches us that when a defendant raises a defense of self-defense, unless he brings evidence in of his own peaceful character, then he's clearly opening the door. But just by simply testifying that I acted in self-defense, that does not allow the state to bring in prior substantive evidence. There is a pretty viable issue on the instructions here, and so I reviewed the record to look at the post-trial motion, and I don't see an instruction issue in the post-trial motion. And Your Honor is correct. Now, counsel did argue in the post-trial motion that the judge was wrong to allow the introduction and rebuttal of the additional convictions. And I guess in a sense I look at these two errors as- But it wasn't formulated in terms of a jury instruction issue. Well, that's correct. Of course, if those additional convictions don't come in, you don't obviously have the instruction problem at all. I view these two errors really as interlocking, going hand-in-hand. Because it's step one, you bring in the convictions. If you don't, you don't worry about the instruction. Step two is the instruction. Counsel did argue against both. And again, in the record, the judge clearly says he's giving that instruction over defense objection. But the defendant didn't include that in the post-trial motion, and you have not argued plain error. Right, that is true. Again, counsel does argue in the post-trial motion those convictions should not have come in at all. And so perhaps giving a broad interpretation, my reading of that is it opens up the entire error of what happened at the rebuttal stage. You've answered my question. I know we've gone long over. Thank you. Thank you. Any other questions? Thank you. Thank you, Your Honor. Mr. Roswell. May it please the Court. Counsel. In his brief, the defendant first argued that the trial deterred when allowing the people to introduce into evidence three of the defendant's prior convictions for rebuttal purposes. This, of course, as mentioned, was a self-defense case, and the defendant admitted that he had killed the victim. The prosecutor relied on the Harris case from this Court and on the Supreme Court case of Lynch, which people acknowledge in our brief do not stand for the proposition that when evidence of the victim's violent character is introduced, then the people can also introduce evidence of the defendant's violent character. So we acknowledge that it was a misreading of those, at least the Harris case. Lynch deals with the victims, not with the defendants necessarily. Now the defendant had fronted, of course, three of his prior convictions, one for the violation of order of protection and two for aggravated battery. And after the presentation of evidence, the prosecutor asked to present and rebuttal three more of the defendant's prior convictions. Now the trial judge admitted the defendant's conviction was a 1996 battery and two domestic battery convictions, a 1997 and a 2000 conviction. Now this Court may determine that it was error to introduce the additional evidence of those prior convictions, but where the defendant had already testified to three prior convictions on direct examination in his case in chief, the disclosure of more convictions would not have the same prejudicial effect, which would exhibit a defendant not already provided proof that he had committed other violent crimes. But for the instruction, but for the jury instruction that allowed the jury to consider these convictions substantively. I will get to that, Your Honor. I believe there's a misinterpretation of what happened at court regarding those instructions. Now our Supreme Court in Patterson indicated that there are three approaches for measuring whether an error is harmless, and that's focusing on the error itself to determine whether it might have contributed to the conviction. And counsel has mentioned earlier that the jury wanted transcripts of various witnesses, the medical examiner, the defendant, three of the other witnesses in particular, and they deliberated over a period of two days. So this shows that it was harmless to have entered these other convictions in because otherwise they wouldn't have taken the time to read these transcripts and pour through the evidence to see what really transpired here. If you examine on the second factor, examine the evidence in the case to see if overwhelming evidence supports the conviction, it certainly does. Let me understand this. I'm a little slow here. It's a harmless error because the state didn't destroy its credibility entirely? Oh, no, Your Honor. Absolutely not. No, we're just saying that the fact that the jury wanted those transcripts and took two days to make their determination shows that those three convictions, even if they are considered to be error in this case, were not a basis for the jury's conviction. We're saying that it was the evidence that was presented that the jury relied on. Yeah, that's what I meant, is that you didn't drop an atomic bomb on his credibility with those three convictions. Exactly. That's what I meant. Yes, Your Honor. So that it's harmless because it didn't have the effect that you desired. The prosecutor may have desired. I can't speak to that. That's why you introduced them. One might... I mean, there's no other reason to. It doesn't matter when they tip the balance, does it? If the jury thinks about something for two or three days and those additional convictions still are the things that tip the balance, then they're not harmless. But we have no indication from the record that the jury, that that is what tipped the balance in this case. The evidence under the second factor of Patterson is overwhelming. The defendant certainly claimed that he did it in self-defense, but none of the other evidence supported his own claim. The medical examiner showed that all the wounds on the victim's arms were defensive wounds. He had three fatal wounds, two to the heart and one to another area of his body. The defendant claimed that he had been grabbed around the throat and almost passed out from the victim choking him. But when you view the video of the police interrogation where he's taking off his shirt and such, there are no wounds to him. The defendant admitted himself that he had no injury from any attack. You can see that his throat area is completely unharmed. There's no redness, there are no bruising, nothing to support his claim that the victim attacked him. And the other witnesses say, no, it didn't happen. Let me ask a factual question. I was confused about something. The coroner said that he thought that it was the scissors that inflicted the fatal wound. There were knives found that had blood on them also at the scene. Is there a problem with this surfeit of weapons that looked like they could have been involved in all of this? Well, there were kitchen knives. It's true they were in the house. But there was a broken blade in the victim's arm. He had multiple wounds that would have been made from a knife. And he also had different wounds that could have come from a pair of scissors, is what the indications seem to be. The defendant admitted that he carried scissors with him all the time for the purpose of cutting his hair, is what he said. So we have in the area, we also had the homeowner, Catherine Madugno, I believe is what we pronounce her name, but she saw the defendant flipping about a six-inch knife with a four-inch handle and a two-inch double-edged blade that she observed him flipping earlier. Now, they didn't describe the blade that they removed from the victim's arm, so we don't know if it matched up with that testimony or not, unfortunately. They also didn't, whatever scissors they found, they didn't test them for blood. So we also have the issue where there were some problems with the police investigation regarding those particular scissors. So we can't say that the individual scissors that were found may have been one of the weapons used on the victim. So does any of that create a question with regard to the facts of the case? You've got the coroner saying maybe the scissors are probably the scissors, and then you've got these knives and a knife blade. You're talking about how this is harmless because the evidence is overwhelming, but it was not clear to me what the evidence was showing in terms of what caused the injuries. Well, what we're talking about in terms of the evidence being overwhelming is that we have witnesses in the room who saw the attack, saw that the defendant was punching at the victim's chest area, and they didn't see any attack by the victim before this. They didn't specifically see what weapon did this, but no one else was attacking him. By any other evidence that came up, no one else attacked the victim but the defendant. So we have no other reason to believe that any weapons were on any other person or used by any other person other than the defendant, and he himself admitted that he killed the victim, but he just claimed self-defense instead. So we've got an admission that I killed. It was a homicide. And I'm responsible for the homicide. Yes, exactly. So all that is... That's just another layer of evidence showing that he committed the crime, but it just shows that he had the weapons because he admitted that he killed him. When he's saying no, I did it in self-defense because he grabbed me around the throat and such. But we don't have any proof of that. We see the opposite in the DVD, the video from the police interview. So we're not dealing with an issue of who killed him or was there a group that killed him. We have an admission by one person, yes, I killed him. That's exactly right, Your Honor. Correct. The third Patterson factor is that you determine whether the evidence is cumulative. In our brief, we extensively detailed all these different factors, all the evidence, and we showed that under the Patterson approaches, the results are the admission of these three additional crimes that would have been harmless error under our analysis. Of course, you can accept or reject that analysis as you wish. That's your prerogative. Now, the defendant also challenges one of the jury instructions given in the case, and he asserts that the people offered the Pattern Jury Instruction 3.12x. In fact, the people initially indicated that they did not object to the jury instruction requested by the defendant, which was Pattern Jury Instruction 3.13. The prosecutor asked to have 3.13 modified, but only if the trial judge first granted their request to admit more of the defendant's convictions. Now, Instruction 3.13 states, quote, So the defendant clearly wanted 3.13 as a limiting instruction regarding the convictions he had already fronted. Now, after the defense counsel requested 3.13, the trial judge, not the prosecutor, suggested that 3.12x would be the more appropriate instruction to give and modify based on the evidence and the argument that the prosecutor had made regarding 3.13. Now, the committee notes that Instruction 3.12x states, quote, You have this instruction immediately following either Instruction 3.12 or 3.13 or both. Thus, because the defense counsel requested 3.13, and he wanted 3.13 to be given without modification, that's clear we quoted on pages 22 and 23 of our brief the discussion about those jury instructions. 3.12x then had to be given as to the victim. You give out 3.13, you have to give out 3.12x, which is a victim's instruction in the pattern jury instructions. And ultimately, if you read through that entire discussion about the jury instructions, it was defense counsel who asked that 3.12x be given with both the victim's and the defendant's names on the instructions. Thus, it was the defendant who procured, or at the very least, he acquiesced in the giving of the instruction of 3.12x as to both the victim and the defendant. And therefore, the defendant has forfeited on appeal the issue of whether 3.12x was improperly given. And that addresses what? I'm sorry, Your Honor? 3.12 addresses what? 3.12x addresses, I've got the actual instruction here. It's about the prior violent acts and reputation of the victim in a self-defense case. And in fact, in this particular case, they did modify this instruction to actually reduce the burden, as we mentioned in our brief. None of the particular – there are three different aspects. You were going to tell us the instruction. If you'd like, I'll read the instruction. Are you reading the instruction as it appears unmodified or as it was given modified? As given, it was modified. Okay, so you're going to be – As to the victim in particular, it was modified to reduce the burden to say that the victim made threats of violence. And that's not one of the choices that are given under the pattern jury instruction. So if you only have threats as opposed to prior conviction of a crime or prior acts of violence or reputation for violence, which are the choices, you see that that instruction as to the victim actually reduced the burden in terms of defense. The defendant's self-defense claim. If he only had to threaten violence to the defendant, which is the way that instruction actually came in, then the defendant had a better chance of proving his case under that modification. There was nothing about the instruction that made it proper to be applied to the defendant in and of itself? In and of itself, absolutely. The pattern jury instruction specifically says that it's to be given for a defendant. And there was some evidence here that the trial judge in particular felt that it should be modified and given as to defendant also. I don't know the rationale behind that because the judge did not elaborate on his thinking behind that. So we don't have anything from the record that will support why the judge felt that 312X should also be given for a defendant in a modified form. Did you say you have the instruction at your fingertips and you were willing to read it to us? Oh, if you'd like. Now I would like because I've become confused. Oh, I'm sorry. I have the original version. I don't have the one that was in the trial record. I apologize. Okay. You don't have the modified one? No, no, I don't. I'm sorry. I have the original form. Because this jury received an instruction from the court that says you have received evidence of defendant's prior convictions of a violent crime. It's for you to determine whether the defendant was convicted. If you determine the defendant was convicted, you may consider that evidence in deciding whether the state has proof beyond a reasonable doubt that the defendant was not justified in using force, which he used. And you're telling me that preceding that language, there's some language about the victim's prior convictions. That's a whole – you just read, I think, 312X. That was given as to the defendant, if I remember correctly. And that's a totally modified version. There is no 312X as to a defendant. All right. And it's only for a victim. That's the way it's described. Now, we also had a defendant asserting about the trial judge basing his sentencing decision on a private investigation if the life expectancy tables and the case should be remanded for sentencing. But, of course, the defendant forfeited this issue because he did not preserve it. He didn't raise this issue before. But even so, regardless of that, the trial judge did properly consider the sentence factors and other considerations allowed by controlling authority, and he sentenced the defendant to a term of incarceration that is well within the allowable sentencing range for first-degree murder. And thus, the trial judge did not abuse his discretion in sentencing the defendant to 33 years incarceration. The defendant asked the court to review it for plain error. In this case, any reliance by the trial judge on the life expectancy tables in finishing the sentence, if error was not plain error. The judge, or excuse me, the defendant, in his brief, the defendant asserted that the trial judge gave the defendant a 33-year sentence because the judge believed it to be, in effect, a life sentence. In our own brief on pages 30-31, people quoted the judge's comments prior to the sentencing which showed that he considered all the proper factors. Then the trial judge stated, what I looked up is life expectancy tables. I'm going to sentence Mr. Cervantes to what his life expectancy is expected to be. If he survives that through the grace of God, then he'll have some time and freedom on this earth. And if he doesn't, he won't. So clearly, it's clear from the record that the trial judge relied on proper considerations pursuant to statute and controlling authority. And he considered the defendant's criminal history when determining the sentence. The trial judge's review of the life expectancy tables was not for the purpose of assuring he died in prison because if he wanted him to die, he would have gone for 40 or 50 years. He instead went down to 33 years. Because the trial judge anticipated that the defendant could outlive his sentence and live out the rest of the term as a free man, we don't believe that the judge intended to give out a life sentencing sentence by reviewing those tables. Do you have any other questions? That may be the case, but are life expectancy tables one of the proper factors to be considered in an individualized sentencing? That's correct. There's no authority that allows him to do that. Is there any authority that allows him to go outside the scope of the pre-sentence investigation to do his own research? Well, not in the terms of... I mean, a prior conviction, something like that. You could consider the defendant's whole life, but there is no authority specifically saying that you can look at life expectancy tables. I've never seen any authority that supports someone doing that. I don't think he did it, as I said, to make sure that he died in prison because he certainly would have gone for a higher sentence. He simply wanted to make sure that he had a long sentence and then possibly he could still outlive this and have a life beyond that sentence. I believe that's what his mentality was, but the judge unfortunately didn't give us his rationale. It's kind of a slippy slope that Justice Holbridge mentioned here. If the judge can consider life expectancy tables, can he consider crime rates in the neighborhood where these crimes occurred? I mean, where do we stop the court from doing its own research and fashioning its own reasons for our punishment? I don't disagree with you, Your Honor, because the case law is pretty clear that you can't do private investigations in sentencing. Nor can we. We get our cases and it says they walk through the courtroom doors. Certainly. Only under the doctrine of judicial motions. Right. Right. And I don't disagree that the actual viewing of the life expectancy tables in itself was a private investigation, but I don't believe from the record that the judge did it on the basis that the defendant would have us believe that he wanted him to have a life sentence. Because as I said, you want a life sentence? You've got up to 60 years to give. Give him the full 60. Any other questions, Your Honor? No, thank you. Mr. Fisher, rebuttal. Briefly concerning issue two, the sentencing issue. Again, the judge, and this is a quote on the record, Your Honor, can double check it. He says, if by the grace of God you should survive this 33 years, well then you'll have some time as a free man. I think when you put it that way, what you're basically saying is, you know, look, you're going to spend the rest of your life in prison. And after all, what's the purpose in the first place of even looking up life expectancy tables? It's to see what the life sentence would be. How old was Mr. Cervantes at the time? I believe he might have been early to mid-30s. I don't recall offhand. I know it's in the free sentence report. I think he was 40. It may even be in the brief. He may well have been 40. I mean, that's the only reason to look up life expectancy tables. And again, it's not even as if he had done it prior to sentencing. He does it during the sentencing hearing. Now he has the authority to take a quick break, go back, maybe look up a case, you know, what have you. But for the only purpose of looking up life expectancy tables, the counsel says, well, he said he was considering all these other factors. It's true he mentioned the PSI. He mentioned having considered, you know, all the factors. But the only one he really talked about was life expectancy tables. I think that shows that it was in the forefront of his mind, and that was the determining factor in arriving at the 33. I wanted to come back to Your Honor Justice Wright's question of me earlier. When you asked about the way of error, plain error problem in the post-trial motion, I would certainly agree with Your Honor that the best practice would have been to say in the post-trial motion both, look, the conviction should not have come in and the instruction was improper. But the way it all came out, of course, the only reason the convictions were coming in was pursuant to the judge's thought that, oh, this instruction should also apply to these convictions as well as to spend months of violent character. And so that's where I say it really goes hand-in-hand. It's interlocutory. And when the judge denies as to at the post-trial motion stage saying, oh, I don't think I made the right decision, and allowing the convictions to come in, what he's implicitly saying is that I made the right decision, is that they were admissible for this reason set forth in 3.12X. So I think although counsel could have been more specific, should have been more specific, and personally I think counsel covered it. If not, I would ask Your Honors to find plainer. I don't think I argued it, but I think it was preserved. The state argues, well, the fact that the jury asked for all these various transcripts, apparently these additional convictions, as Your Honor, I think, put it, said they were not the equivalent of an atomic bomb just totally blowing them out of the water, but it could well have been the final straw. I mean, they might have looked through these transcripts. And interestingly, excluding the doctor, excluding the police officers, all the individuals in the House that day, they all had prior convictions. They'd been drinking. None of them were sterling characters. And so maybe amongst them there wasn't a whole lot to choose from in terms of, oh, this person's real credible, that person's real credible. And in the end, it could well have been these additional convictions. And as I said before, I think one of the problems is that he fronted some of his convictions, and now they hear he's got even more, and maybe, just maybe, they're saying, oh, he lied about that, maybe he lied about the self-defense. I also wanted to come back to something Your Honor, Justice Holder, had asked me earlier about the deadly force, and it actually reminded me during counsel's argument that the defendant did testify at one point the victim was choking and that he was seeing stars. Again, as I mentioned, the judge did instruct on unreasonable belief in self-defense, as well as perfect self-defense. I think this case kind of went off the rails, both at trial and at sentencing. The law simply did not allow what happened here in terms of the admission of the additional convictions and the jury being told they could be considered substantively. The case law has recognized that it's simply unduly prejudicial to the defense. It came in, I submit, the defense was prejudiced, and therefore, once again, Mr. Cervantes would respectfully ask Your Honors to reverse the demand for a new trial, alternatively for a new sentencing hearing. Any other questions? Thank you. Thank you, Your Honors. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change.